## The President &c. of the WASHINGTON BANK *versus* EDWARD PRESCOTT.

A book belonging to a bank, and labelled "Notices to Indorsers," in which the entries were in this form—

"Discount  Sept. $\frac{4}{4}$

A. B. . . 100 . . Lady . . . House

C. D. . . 100 . . on desk . . C. R. . . Attest E. F., Messenger."

not stating that A. B. was maker and C. D. indorser, nor that notice was given to the indorser after a demand on the maker, was *held* to be admissible in evidence to prove a demand on the maker and notice to the indorser of a note discounted by the bank, it being first testified, that it was the duty of E. F. as messenger to make a demand on the makers and give notice to the indorsers of notes held by the bank, and make the entries in the book, that the entries were in his handwriting, and that he had deceased.

Where four notes made by the same person and indorsed by the defendant were in the hands of the same holder, and the defendant, before any of them became due, gave the holder an order for the payment of the notes (without expressing any priority) out of property conveyed by the maker to assignees, by an indenture to which the indorser was a party, for the payment of the notes in full or proportionably, which property proved to be insufficient, and the assignees, in pursuance of the order, made a payment, after all the notes had fallen due, and the holder applied the money to all the notes *pro ratâ*, instead of applying it wholly to those which had first fallen due, it was *held* that he had a right to make such application

In an action on two of the notes it was *held* that the other two, with the indorsements thereon, were admissible in evidence, in order to explain the appropriation of the money paid on the order.

It was *held*, that the jury, in assessing the damages in such action, were not to regard any dividend which might in future be paid upon such order.

ASSUMPSIT on two promissory notes made by Daniel Baxter junior, and indorsed by the defendant, for $2000 each, payable in four months. One was dated May 28, 1833, the other, June 4, 1833.

At the trial, before *Wilde* J., the plaintiffs proved, that at the time these notes became due, one Sylvester T. Goss held in the Washington Bank the office of assistant discount clerk and messenger; that it was his duty to keep a record of all notes discounted or left for collection, and to give the usual notices, and to make a record thereof; that Goss was deceased; that a book, labelled on the back, "Washington Bank. Notice to Indorsers," which was produced, was a book kept in the bank as a record of all notes upon which notices had been issued and delivered by Goss , and that the entries and minutes in this book were in the handwriting of Goss. The

plaintiffs alleged that this book contained entries in reference to the notes in suit, and to two other notes between the same parties, showing that payment had been duly demanded of the maker and notice duly given to the indorser. The entries were in this form :

Discount. Sept. 28.

Daniel Baxter jun. . . 2000 . . Lady . . House.
Edward Prescott . . . 2000 . . on desk . . C. R.
Attest, S. T. Goss, Messgr.

It was proved that the promisor and the indorser (both of whom had failed in business) kept their accounts and transacted their business at the Washington Bank, and from time to time obtained loans or discounts, and made renewals, and up to the time of their failure, had been in the habit of receiving notices, through the same officer, and paying their notes.

The defendant objected that there was not sufficient evidence of demand and notice ; and if there was, that the plaintiffs had released or discharged the defendant by receiving an order, dated September 14, 1833, drawn by him upon the assignees of the property of Baxter and accepted by them, to pay to the plaintiffs, from the defendant's part of the funds arising from the effects of Baxter, the amount of the notes held by the plaintiffs, signed by Baxter and indorsed by the defendant. It appeared that Baxter had made a general assignment of his property for the payment of his creditors, to which the defendant was a party, and in a schedule of debts which were to be paid in full, or proportionably if there should be a deficiency of assets, were the two notes now in suit, and also the two other notes above mentioned signed by Baxter and indorsed by the defendant, one of them dated August 2, 1833, for $600, the other dated August 20, 1833, for $2700, each payable in four months. The effects of Baxter proved to be insufficient to pay in full the demands on the schedule. One of the assignees testified that he paid the plaintiffs $4326·36 in one sum, upon the abovementioned order, and that there would be another dividend of about $865, but when it would be realized, he could not say.

The plaintiffs put into the case the two notes for $600 and $2700, which notes, as well as the two in suit, were due and

unpaid on February 15, 1837, the time of the payment of the $4326·36 ; and it appearing that this sum was apportioned and indorsed upon the four notes, it was contended by the defendant, that it should have been applied 'to the payment of the two notes first due.

The jury were instructed, that it being satisfactorily proved, that Goss the messenger was dead, and that the book referred to was in his handwriting and was a book kept by the bank for the purpose of showing notices upon promissory notes, it was competent and proper evidence to be submitted to their determination ; and that if they believed that the entries in the book had reference to the notes in question, and that demands were made and notices given conformably, they would, on this part of the case, find for the plaintiffs ; that as the four notes were signed and indorsed by the same parties and were all overdue at the time of the payment made by the assignees, the money paid was rightfully applied to them all ; and as to the supposed release, that the burden was on the defendant to show such release, and if the jury were satisfied that the order was given in consideration of a promise by the bank to release the defendant, this would be a good discharge in law, although it were accepting a less sum in discharge of a greater sum then due.

The jury found a verdict for the plaintiffs for the balance due on the two notes in suit.

The defendant moved for a new trial, because the messenger's book was admitted in evidence, the entries in which were not verified by the suppletory oath of any one, and were unintelligible, and did not certify any fact, nor designate the promisor, nor the indorser, nor any place where notice was given, nor state that the notice to the indorser was subsequent to the demand on the maker : because notes of Baxter not declared on were admitted in evidence : because the jury were erroneously instructed, 1. that the book was evidence of demand and notice ; 2. that the order given by the defendant to the plaintiffs was not conclusive proof of payment and accord and satisfaction ; 3. that the money paid on the order had been rightly appropriated to the four notes ; and 4 that in as-

Washington
Bank
*v.*
Prescott.

June 14th.

June 29th.

sessing the damages no allowance should be made for the fu
ture dividend of $865, payable to the plaintiffs.

*S. D. Parker*, in support of the motion.

*Cooke*, for the plaintiffs.

PUTNAM J. delivered the opinion of the Court.    The first
question is whether the book produced by the plaintiffs was
admissible as evidence tending to prove the notice.    It is ob-
jected, that it was not verified by the suppletory oath of any
one, as was done in *North Bank* v. *Abbot,* 13 Pick. 471.
But it was proved that the assistant discount clerk and messen-
ger, whose duty it was to make, and who did make the entries,
was dead.    That evidence, we think, was sufficient for the
admission of the book, for the inspection and consideration of
the jury.    It is all the evidence touching that point, which
could be reasonably expected.    But upon the production of
the book it appears to be labelled " Washington Bank.    No-
tices to Indorsers," and an argument is drawn from that cir-
cumstance, that it does not purport to be a record of notices
to makers or promisors, but merely to indorsers.    It would
not do to stop at the labelling, but the book should be opened
and the contents examined.    And there it is found, that there
was no designation given of the character of the individuals,
whether they were indorsers or makers.    This circumstance
is certainly objectionable, and has given rise to an able argu-
ment ; which however we think more ingenious than solid.
For there are found entries which have reference to certain
notes, which the plaintiffs contended were those in question,
and to two other notes which are not now in suit ; and the en-
tries show that the parties to those notes, which were produc-
ed, were named.    The instruction to the jury was, that it
being proved that the messenger was dead, and that the book
was in his handwriting, it was competent evidence, and if they
believed the entries in the book had reference to the notes in
question, and that the notices were given conformably, they
would in that part of the case find for the plaintiffs.

The memorandums in the book are described by the coun-
sel for the defendant, as unintelligible, but upon inspection we
think the jury might well understand them.    Indeed, taking
the notes and the book together into comparison, we think that

it would be difficult to find any two intelligent and competent jurors to understand them differently, or to come to a different result upon the questions ·proposed, viz. whether a demand and notice had been made and given to the parties as the plaintiffs alleged. Taken into consideration together, all the uncertainty who was promisor and who indorser, disappeared. No other notes were produced at the trial than those which were produced by the plaintiffs.

It was a question to be settled upon the evidence. The jury examined the book and compared the entries with the notes in question, and on the whole matter, upon this part of the case, found for the plaintiffs. From the facts which were proved the jury might reasonably believe that the demand was made upon the promisor and notice of non-payment given to the indorser, as was alleged by the plaintiffs.

It appears that at the time when the order in the case was drawn by the defendant and accepted by the assignees of Baxter, the plaintiffs held four notes against Baxter, which were indorsed by the defendant. These notes were overdue when the plaintiffs received $4326·36 upon the order. And it is contended for the defendant, that this transaction was an accord and satisfaction of the two notes now sued. It is said that the amount received was an extinguishment of those two notes at any rate, and should have been applied to the payment of the eldest notes. Whereas the plaintiffs have apportioned the whole sum received, upon all the notes which they held.

There are two answers, either of which we think is sufficient, to this argument.

1. Here was no particular appropriation by the debtor, the payer of the money, and the creditor in such case might, by the general rule, appropriate the money towards the extinguishment of such demands as he pleased, which he held against the debtor and which were due.

And 2. by the terms of the assignment, to which the defendant was a party, the money collected by the assignees was to be applied in payment and discharge of the debts of the party of the first part (the debtor) to the persons named in the schedule (the creditors) in proportion to the demands named

in the schedule, without preference or priority, until all the claims should be paid in full.

And the jury found that the money was not paid in satisfaction of the notes now sued.

It was contended for the defendant, that the two notes which are not sued ought not to have been introduced on the trial. But we think they were properly in evidence to show the whole claim of the plaintiffs, and to explain the manner in which the plaintiffs had appropriated the money which they had received upon the defendant's order.

It was argued for the defendant, that as there would be another dividend of about $865, this amount should be deducted. That money has not been received by the plaintiffs. They will be accountable for it whenever it comes to hand; but we see no reason why they should allow or give credit for it before they actually receive it.

On the whole, the Court are all of opinion, that the motion for a new trial be overruled, and judgment be rendered upon the verdict.